## James's Estate.

*Testamentary trustees — Survival of discretionary power to substituted trustee.*

1. A discretionary power vested in testamentary trustees *virtute officii* survives to a substituted trustee appointed by the Orphans' Court under the Act of April 22, 1846, § 1, P. L. 483.

*Testamentary trustees—Charities—Discretionary power to select objects subject to approval of Orphans' Court judges.*

2. Where a testatrix directs her trustees to distribute the residue among five institutions for the benefit of poor girls to keep them from going astray and to encourage them in virtuous habits, etc., subject to the approval of the judges of the Orphans' Court, "who will please see that it goes for the benefit of poor young girls to enable them to maintain their virtue rather than to reformatories for their restoration after they have fallen," an affirmative duty is cast upon the judges, requiring them to approve the exercise of the discretion of the trustees and not merely to interfere where the discretion has been abused; hence, the distributees will be required to administer the money so awarded them as a separate and distinct trust and at the expiration of three years file their accounts, and the court will then determine whether the trust has been fulfilled in the manner intended by the testatrix.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1891, No. 449.

Testatrix died Dec. 22, 1889, leaving a will dated June 6, 1867, with a number of codicils, by the 5th of which, bearing date April 24, 1886, she provided, on the extinction of her family, as follows:

". . . In that event I give and bequeath the whole of my residuary and reversionary estate to my executors and trustees or their successors living at that time who I direct to divide it into five equal shares or parts and distribute the same to five institutions for the benefit of poor young girls to keep them

from going astray to encourage them in good virtuous habits to be plain and moderate in their dress and of good moral character to be trained to economy and strictly virtuous christian principles.

"The five institutions to be selected at that time by the Trustees then acting subject to the approval of the Judges of the Orphans' Court of the City of Philadelphia who will please see that it goes for the benefit of poor young girls to enable them to maintain their virtue rather than to reformatories for their restoration after they have fallen."

One of the two testamentary trustees resigned and the other was removed from office, and the accountant, the Land Title & Trust Company, was appointed substituted trustee by the Orphans' Court under the Act of April 22 1846, § 1, P. L. 483.

The accountant, in the performance of its duties, through its officers, after careful investigation, selected as the beneficiaries the following five institutions to receive the residuary estate under the terms of the codicil: Big Sisters Association of Philadelphia, Children's Aid Society of Philadelphia, Family Society of Philadelphia, White-Williams Foundation and Young Women's Christian Association of Philadelphia.

At the audit, there appeared counsel for various charitable organizations not included in the selection by the accountant, which were engaged in work of the nature contemplated by the testatrix. It was conceded that these organizations were neither legatees nor creditors, but they desired to be heard as friends of the court, lest, from lack of enlightenment on the charter qualifications, the purposes, capacity and character of the services actually rendered by the selected institutions, the intentions of the testatrix might be thwarted

The Auditing Judge (THOMPSON, J.) held that the substituted trustee could exercise the powers given the original trustees, and, after a careful analysis of the testimony, reached the conclusion that the discretion vested in the accountant had been wisely exercised, or at least that there had been no abuse of discretion, saying:

"If valid, the first objection [that the discretion vested in the executors and trustees did not survive to the substituted trustee] defeats any selection by the accountant. The only authorities cited in its support are Children's Hospital, 10 W. N. C. 313, and Murphy's Estate, 184 Pa. 310. In the first case the executors and trustees named in the will, although authorized to appoint a successor to fill any vacancy and giving the person or persons so to appointed all the power and authority conferred upon the nominations in the will, had all died without making any appointment; and, as the case arose before the Act of 1855, it was held that the power of selection was dead and could not be revived by the appointment of a trustee by this court and did not enure to an administrator d. b. n. c. t. a. But in the latter case, where the selection of the beneficiaries was to be made by the executors or their successors, and one of the executors had died, it was held that the surviving executor had power to designate the beneficiaries, which were to be benevolent charitable and religious institutions and associations, without specifying any particular purpose for which they were to use the gifts; and because the institutions selected were all charitable to some extent, the designations by the surviving executor were approved.

"In the present case, the testatrix vests the discretion of selection in her executors and trustees, 'or their successors living at that time'—'the trustees then acting'—and the appointment by this court of the accountant as successor to the trustees named in the will cannot be gainsaid. The successor to distribute the estate to 'five institutions for the benefit of poor young girls

James's Estate.

and this court is called on by the will, not to select the institutions that are to administer the fund, but to 'see that it goes for the benefit of poor young girls' to accomplish the end sought by testatrix—an oversight neither more nor less intensive or extensive than the duty imposed upon the court by existing law in all cases of trusts.

"In Dulles's Estate, 218 Pa. 162, where the executors were granted power to dispose of and distribute residue among such religious, charitable and benevolent purposes and objects or institutions as in their discretion shall be best and proper, Chief Justice Mitchell said: 'It is said that the word benevolent is not definite enough for the court to enforce. But it is not necessary that it should be. The definition and application of that word are not for the courts, but for the executors. The only authority of the court is to prevent a manifest diversion to a purpose clearly outside of the class prescribed. So long as the executors are exercising their right of selection in good faith, the right to do so is in them by the express words of the testatrix's will.' See, also, Kimberly's Estate (No. 1), 249 Pa. 469, and Acts of 1855, 1889 and 1895 relating to charities. I, therefore, hold that the selection was confided to the accountant as succeeding trustee, and to it alone.

. . . . . . . . . . .

"Discretion, wherever reposed, may never be exercised perfunctorily, arbitrarily or without due consideration. 'The very term itself, standing alone and unsupported, imports the exercise of judgment, wisdom and skill, as contradistinguished from unthinking folly, heady violence and rash injustice. When technically employed in legal instruments, its proper acceptation is inseparable from the idea of dispassionate conclusion:' Paschall v. Passmore, 5 Pa. 295, 304. As said by Audenried, P. J., in Lubin Manuf. Co.'s Appeal, 5 Dist. R. 578: 'By discretion is meant the power to discriminate and determine what under existing circumstances is right and proper. The lawful exercise of discretion involves a fair consideration of all peculiar features of the particular question to the disposition of which it is to be applied. It excludes not only the play of fancy or caprice, but also servile adherence to a hard and fast general rule.' It is to be treated in a liberal spirit, and where its exercise is based upon consideration of all information and facts available, with due regard to the purpose of the discretion, it may not be lightly set aside, although had it been committed to another the result might be different. Judgments may differ and yet be honest; and to establish a violation of discretion, it is always incumbent to show, by clear proof, a wanton exercise: Paschall v. Passmore, supra.

"The general subject received consideration as early as 1844 in Grandom's Estate, 6 W. & S. 537, referred to by Mr. Cadwalader and Mr. Hart. That decision, although diligent search fails to find it cited in subsequent reports, is highly illuminating in the present situation. That testator desired his trustees to give his money to a benevolent society, if any existed, 'to alleviate (the suffering of) the most prudent of the poor, but not the intemperate, in procuring fuel, clothing and other necessaries which such persons want in winter.' Such a society was created under the name of the Grandom Institution, and to it the trustees appointed the estate. The gift was claimed by the Philadelphia Temperance and Benevolent Association, whose objects, as stated in its charter, were 'the promotion of the temperance cause . . . and the dispensation of the charity of the association to the suffering poor of Philadelphia and its districts of good moral character, who do not use intoxicating liquors as a beverage.' Chief Justice Gibson, in sustaining the appointment by the trustees, said: 'The office of these trustees involved the exercise strictly a mixture of both trust and power. . . . To induce a chancellor to control

James's Estate.

the exercise of a power like the present would require proof of an application of the charity to purposes inconsistent with the testator's design; and what proof of it have we here?'

"And, indeed, what proof of abuse of its discretion by the accountant have we in the present case? To afford opportunity for such proof, I opened the door as widely as possible and earnestly invited the production of evidence showing the facts upon which a finding of disqualification of any of the selected corporations could be based. But no such evidence was offered. The plain inference is that no such facts exist: Samson's Estate, 22 Pa. Superior Ct. 93.

"Considering the commendable, conscientious effort by the accountant to exhaust all possible sources of information to enable it to perform its, not by any means easy, task, with an eye single to the achievement of the greatest good to the greatest number of beneficiaries, I cannot find that there has been any abuse of discretion, and, therefore, see no reason for withholding my approval. Distribution will be directed accordingly."

*Philip Price*, for Bethesda Children's Christian Home of Chestnut Hill exceptant.

*Harry C. Hart* and *Francis B. Biddle* (of *Barnes, Biddle & Morris*), for Board of Counselors of Girl Scouts, exceptant.

*John Cadwalader, Jr.*, for Young Women's Boarding Home Association, *amicus curiæ*.

*Bernard L. Frankel*, for Big Sisters' Association; *Spencer Erwin*, for Family Society; *Rodney T. Bonsall*, for Young Women's Christian Association and *Theodore S. Paul*, for Children's Aid Society and White-Williamson Foundation, contra.

GEST, J., June 3, 1927.—There can be no doubt that the present accountant, as trustee, is vested with a certain discretionary power to distribute the estate in accordance with the directions contained in the fifth codicil to the will of the testatrix. This codicil expressly refers to the successors of the executor and trustees, but, aside from this, we may refer, in addition to the cases cited by the Auditing Judge, to Kershaw's Estate, 27 Dist. R. 659, and Anderson's Estate, 269 Pa. 535.

A discretion being thus vested in the accountant, by which it has been exercised, it would, in the usual case, be necessary for an exceptant to show that this discretion has been abused, in the technical legal sense of the term; but the will in this case confers a discretion which is not absolute in terms, inasmuch as the testatrix expressly says that the selection of the beneficiaries "subject to the approval of the Judges of the Orphans' Court who will please see that it (meaning her estate) goes for the benefit of poor young girls to enable them to maintain their virtue rather than to reformatories for their restoration after they have fallen." This appears to us to cast an affirmative duty upon the judges of this court. It is not enough for us to be satisfied that the trustee has not abused its discretion; we are required to approve its exercise. It may be that were we required in the first instance to select the five institutions best qualified to carry out the beneficent intent of the testatrix we might have selected those represented by some of the exceptants, or perhaps others that have not appeared. But the primary duty of selection has been, in our opinion, conscientiously exercised by the trustee, to which it belongs, and this exercise of its discretion is entitled to great weight, especially as it has been approved by the Auditing Judge in his careful adjudication. Our approval of the institutions so selected is a continuing duty, and the

James's Estate.

future alone can determine whether other institutions would be better able to carry out, in a satisfactory manner, the special purpose of the charitable and beneficent provisions of the fifth codicil; so, in confirming the adjudication, we add to it that each of the distributees shall keep and specifically administer the moneys so awarded to them as a separate and distinct trust, and that each of them shall, at the expiration of three years, file its account in order that the court may then determine whether the trust has been fulfilled in the manner intended by the testatrix. To this extent the adjudication is modified.

All exceptions are dismissed and the adjudication, as modified, is confirmed absolutely.

HENDERSON, J., was absent.